UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BRANDI MAY-WEIRAUCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-01205-SLD-JEH |
| | ) |
| ETHICON, INC. and JOHNSON & JOHNSON, | ) |
| | ) |
| Defendants. | ) |

ORDER

Before the Court is Defendants Ethicon, Inc. and Johnson & Johnson's (together, "Ethicon") Motion for Summary Judgment, ECF No. 20. For the following reasons, the Motion for Summary Judgment is GRANTED.

**BACKGROUND**

On January 26, 2005, Plaintiff Brandi May-Weirauch was implanted with a TVT-Obturator ("TVT-O") by Dr. David Steutermann.[1] Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. 2, ECF No. 25. In February of 2015, she was referred to Dr. Peter Sand after complaining of worsening pain in her pelvic and groin area. *Id*. Dr. Sand diagnosed her as "having pelvic pain secondary to [a] misplaced TVT-O sling"; the TVT-O sling was removed on May 18, 2015. *Id*.

On August 18, 2015, Plaintiff filed a complaint against Defendants in an ongoing multi-district litigation ("MDL") in the Southern District of West Virginia. Short Form Compl., ECF No. 1.[2] Her complaint incorporates the First Amended Master Complaint previously filed in the

---

[1] The TVT-O, a pelvic mesh product, is marketed and sold by Johnson & Johnson and its subsidiary, Ethicon, Inc., to treat stress urinary incontinence in females. First Am. Master Compl. ¶¶ 4, 17, ECF No. 29-1.
[2] Plaintiff's case was transferred to the Central District of Illinois on May 28, 2020. *See* Transfer Order 2, ECF No. 28.

1

MDL. *Id*. at 1. Plaintiff alleges that "Defendants intentionally, recklessly and/or negligently concealed, suppressed, omitted, and misrepresented the risks, dangers, defects, and disadvantages of the [TVT-O] and advertised, promoted, marketed, sold and distributed [it] as a safe medical device" despite knowing that it was not safe and would (and did) cause serious medical problems. First Am. Master Compl. ¶ 26. She claims that because of Defendants' actions, she was implanted with the device and suffered serious medical problems. *Id*. ¶¶ 26, 40. She brings claims for negligence, strict liability (manufacturing defect, failure to warn, defective product, and design defect), common law fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, negligent infliction of emotional distress, breach of express warranty, breach of implied warranty, violation of consumer protection laws, gross negligence, and unjust enrichment and seeks punitive damages. Short Form Compl. ¶ 13.

Defendants filed a Motion for Summary Judgment on October 29, 2019. Plaintiff opposes summary judgment on Counts I, III, V, VI, and IX. Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. 1.[3] That motion is now before the Court.

## DISCUSSION

I. **Legal Standards**

   a. **Motion for Summary Judgment**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where one party has properly moved for summary judgment, the nonmoving party must respond "by identifying specific, admissible evidence showing that there is a genuine

---

[3] A plaintiff waives her claims not addressed in opposition to summary judgment. *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003) (deeming the plaintiff's negligence claim abandoned because he failed to delineate it in his district court brief opposing summary judgment).

2

dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Parties may not merely refer to their own pleadings, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), but must instead "cit[e] to particular parts of materials in the record, including depositions, documents, [and] . . . affidavits or declarations" or show "that the materials cited do not establish the absence or presence of a genuine dispute," Fed R. Civ. P. 56(c)(1).[4] The court is to "constru[e] the record in the light most favorable to the nonmovant," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003), "resolving all factual disputes and drawing all reasonable inferences in favor of [the nonmovant]," *Grant*, 870 F.3d at 568. However, the nonmovant "is not entitled to the benefit of inferences that are supported by only speculation or conjecture." *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (quotation marks omitted).

b. **Applicable Law**[5]

The Court has jurisdiction over this case on the basis of diversity. *See* Short Form Compl. ¶ 7. As such, it will apply state substantive law and federal procedural law. *See Musser v. Gentiva Health Servs.*, 356 F.3d 751, 754–55 (7th Cir. 2004) (noting that the Federal Rules of Civil Procedure governed whether expert testimony had been properly excluded but that state law would be used to examine whether the lack of expert medical testimony affected the viability of the plaintiffs' claims). "When a diversity case is transferred by the multidistrict litigation

---

[4] "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

[5] Defendants assert that Illinois law applies to the substantive legal issues, Mem. Supp. Defs.' Mot. Summ. J. 4–5, ECF No. 21, and while Plaintiff does not explicitly conduct a choice of law analysis, she appears to acknowledge that Illinois law governs, for example by accepting that Illinois's statute of repose applies to her claims, *see* Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. 10–12.

panel, the law applied is that of the jurisdiction from which the case was transferred," *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010); where cases have been filed directly into the MDL like this one, many courts (including the court in which this case was initially filed) "treat . . . [them] as if they were transferred from a judicial district sitting in the state where the case originated," *In re Yasmin*, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *6 (S.D. Ill. Apr. 12, 2011) (determining that "the originating state [was] the state where the plaintiff purchased and was prescribed the subject drug"); *see also In re Ethicon, Inc.*, 2:12-MD-02327, 2014 WL 346717, at *7 (S.D. W. Va. Jan. 30, 2014) ("As this is a direct-filed case, the choice of law that applies is the place where the plaintiff was implanted with the product."). This Court will apply the choice of law rules of the state where this case originated, and as Plaintiff's TVT-O was implanted in Illinois and she is an Illinois resident, Short Form Compl. ¶¶ 4, 11, that is Illinois.

In products liability cases, Illinois choice of law rules dictate that "the law of the place of injury controls unless another state has a more significant relationship with the occurrence and with the parties with respect to the particular issue." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903 (Ill. 2007) (quotation marks omitted); *see also Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 736, 740 (S.D. W. Va. 2014) (applying Illinois choice of law rules and holding that, as "the surgery to implant the device and any alleged injuries to the plaintiffs occurred in Illinois," the court would apply Illinois law for the plaintiffs' substantive claims). Thus, Illinois law governs.

## II.     Analysis

Defendants argue that they are entitled to summary judgment because Plaintiff failed to provide expert testimony establishing that her alleged injuries were caused by a defect in the

4

TVT-O.  In the alternative, they contend that the strict liability claims are barred by Illinois's statute of repose, the manufacturing defect claims fail because of a lack of evidence that the implant deviated from its intended specifications, the failure-to-warn claims fail because she cannot establish that different or additional warnings would have prevented her from being injured, and the defective product strict liability claim is not recognized under Illinois law.  They further argue that the fraud and warranty claims are duplicative of the failure-to-warn claims; alternatively, the fraud-based claims fail because neither Plaintiff nor Dr. Steutermann relied on Defendants' representations, the fraudulent concealment and constructive fraud claims fail because there was no fiduciary or special relationship between Plaintiff and Defendants, the warranty claims are barred by the Uniform Commercial Code's four-year statute of limitations, the express warranty claim fails for lack of privity and reliance, and the consumer protection claim fails because Illinois's consumer protection laws do not apply in the absence of a claim for economic damages.  Finally, they assert that gross negligence and unjust enrichment claims are not available under Illinois law.

    a.  **Failure to Disclose Expert Testimony to Prove Causation**

Defendants' primary contention is that "[a]ll of Plaintiff's claims fail as a matter of law because Plaintiff failed to disclose any expert testimony establishing [a] causal connection" between alleged defects in her Ethicon mesh implant and her alleged injuries.  Mem. Supp. Defs.' Mot. Summ. J. 5–6, ECF No. 21.  They believe that expert testimony is necessary in this case because establishing causation will require special medical and scientific knowledge and training.  *Id*. at 6–7.  Defendants first argue that Plaintiff's identification of non-retained experts intended to testify as to the issue of specific causation (that is, that Plaintiff's mesh implant was the actual cause of her harm) fails to satisfy the requirements of Federal Rule of Civil Procedure

5

26 and, as such, is an inadequate disclosure. *Id*. at 7–8. Even if the disclosure is sufficient, however, they further argue that Plaintiff has failed to provide expert testimony establishing specific causation, and thus her claims cannot survive summary judgment. *Id.* at 8–9. They assert that an expert disclosure does not qualify as actual evidence in opposition to summary judgment. Defs.' Reply 3–4, ECF No. 26.

Plaintiff responds that her non-retained expert disclosure satisfies Rule 26. Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. 4–6. She places the onus for deposing her non-retained experts on Defendants and argues that Defendants cannot show that there is no genuine issue of material fact because they failed to do so. *Id*. at 7, 9. Moreover, even absent any testimony from her non-retained experts on specific causation, she contends, her general causation expert testimony "combined with temporal evidence" showing a link between the implantation and the worsening of her symptoms suffices to allow her claims to survive summary judgment. *Id*. at 8–9.[6]

### i. Necessity of Expert Testimony

A threshold issue is whether Plaintiff needs to provide expert testimony to survive summary judgment. In Illinois, a showing of causation is required for products liability claims. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 604 (7th Cir. 2016) ("Under Illinois law, plaintiffs in product liability actions must identify the manufacturer of the product and demonstrate a causal relationship between the injury and the manufacturer's product." (quotation marks omitted)); *Brown v. SmithKline Beecham Corp*., No. 06 C 05725, 2008 WL 205410, at *2, 3, 4 & n.3 (N.D. Ill. Jan. 18, 2008) (finding, in a products liability action, that

---

[6] Plaintiff additionally argues that "specific causation is a case-specific inquiry better suited for disposition by a transferee court." Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. 9. This argument was made before her case was transferred to the Central District of Illinois, however, and as Plaintiff was implanted with the TVT-O in Illinois and Illinois law applies, *see supra* I(b), this is the correct court to resolve issues specific to the case.

"[c]ausation [was] a necessary predicate to each legal theory upon which [the p]laintiff base[d] her causes of actions," which included negligence, design defect, failure to warn, breach of implied warranty of merchantability, negligent misrepresentation, fraud, and fraudulent concealment). Thus, in order for any of her substantive claims to survive summary judgment, she must provide evidence that her alleged injuries were caused by Defendants' product.

Where an issue "goes beyond the knowledge that the average lay person reasonably could be expected to possess . . . , competent proof on th[e] issue requires expert testimony." *Muller v. Synthes Corp.*, No. 99 C 1492, 2002 WL 460827, at *6 (N.D. Ill. Mar. 26, 2002) (noting that "[t]his requirement is often stated in product liability cases"); *see also Fulton v. Theradyne Corp.*, No. 06 C 1321, 2007 WL 772953, at *4 (N.D. Ill. Mar. 12, 2007) ("[G]enerally, in products liability and negligence cases involving specialized products and specialized knowledge, expert testimony is required." (quotation marks omitted)); *Brown v. Baker*, 672 N.E.2d 69, 71 (Ill. App. Ct. 1996) ("Generally, a plaintiff in a personal injury case must present the testimony of a medical expert to establish causation if the relationship between the claimed injury and the event in question requires special knowledge and training to establish."). Plaintiff brings her claims based on the alleged injuries that she suffered as a result of being implanted with an allegedly defective TVT-O. *See* First Am. Master Compl. ¶¶ 26, 49. Resolving the issue of causation is a task that goes far beyond the ability of the average lay person: scientific or medical knowledge is needed.[7]

Absent such expert testimony, then, Plaintiff cannot prevail on the current summary judgment motion. *See Baltus v. Weaver Div. of Kidde & Co.*, 557 N.E.2d 580, 584 (Ill. App. Ct.

---

[7] Plaintiff does not dispute that some expert testimony is necessary and instead argues that she "has sufficient expert proof to establish that Defendants' product caused her claimed injuries." *See* Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. 4–9.

1990) ("[I]n cases in which expert opinion is necessary to sustain allegations of the complaint, summary judgment is proper when the plaintiff has failed to present an expert opinion or indicate that such expert opinion would be forthcoming."); *Muller*, 2002 WL 460827, at *3 ("[A] central issue is whether [the] plaintiff can avoid summary judgment against her . . . on claims either of product liability or breach of warranty without presenting any expert evidence. In short, she cannot."). If Plaintiff's expert disclosure is insufficient or she otherwise fails to provide pertinent expert testimony regarding causation, summary judgment must be granted for Defendants.

### ii. Rule 26 Requirements for Expert Disclosures

Rule 26 provides that parties must disclose to each other the identity of witnesses who they may use to present expert testimony at trial. Fed. R. Civ. P. 26(a)(2)(A). The requirements for disclosure vary depending on the type of expert witness. For every witness retained to provide expert testimony, a party is to provide a written report along with the disclosure containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them," information on the data the witness consulted in forming the opinions, and a declaration of the witness's qualifications as an expert. *Id*. 26(a)(2)(B). For non-retained experts, the requirements are simpler. The party instead must provide a disclosure that contains "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." *Id*. 26(a)(2)(C). The consequences of failure to provide proper disclosure are severe: "the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id*. 37(c)(1).

In her expert disclosure, Plaintiff names both retained and non-retained experts. She identifies five retained expert witnesses: Dr. Michael Thomas Margolis, Dr. Jimmy Mays, Dr. Vladimir Iakovlev, Dr. Peggy Pence, and Dr. Anne Wilson. Pl.'s Designation & Disclosure of Case-Specific Expert Witnesses 1–2, Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. Ex. 4, ECF No. 25-1 at 67–71. For each retained expert, she adopts his or her expert report, previously served in the MDL. *Id*. at 1–2, 4. She has attached these reports to her response to the current motion for summary judgment. *See* ECF Nos. 25-2–25-6. Plaintiff also identifies six non-retained expert witnesses: Dr. Steutermann, Dr. Maqbool Ali, Dr. Kenneth Krock, Dr. James Kenny, Dr. Sand, and Dr. Stephanie Dillon. Pl.'s Designation & Disclosure of Case-Specific Expert Witnesses 2. She states that the non-retained expert witnesses

> may testify as to her medical history, any mesh related care and treatment she has received and that she is reasonably expected to receive in the future. Moreover, said non-retained expert(s) may have opinions to a reasonable degree of medical certainty as to the injuries, harm and damages caused or contributed to have been caused [sic] by Defendants' implanted transvaginal mesh products. Specifically . . . , it is expected that all non-retained experts may testify that Plaintiff has been harmed as a result of the defects/features/properties of Defendants' transvaginal mesh product.

*Id*. The disclosure goes on to specify that "[a]ll non-retained experts will likely testify that Ms. May-Weirauch is a 45-year-old woman who received a pelvic mesh implant" and describes the role that some of her non-retained experts played in her treatment—for example, that she "was implanted with the TVT-O sling by Dr. David Steutermann due to symptomatic Grade II uterine prolapse and stress urinary incontinence." *Id*. at 3. Plaintiff further writes in her disclosure that "[a]fter her implant, [she] suffered from chronic pelvic pain, bowel adhesions, ovarian cysts, abdominal pain, recurrent UTIs, and severe symptomatic macromastia," and that it was later diagnosed "that her pelvic pain was secondary to the misplaced distal transobturator midurethral sling," requiring removal of the device. *Id*.

Defendants do not question the adequacy of Plaintiff's disclosure of her retained expert witnesses. Mem. Supp. Defs.' Mot. Summ. J. 7. Their argument focuses instead on her non-retained experts, who, they allege, are necessary to establish specific causation and whose disclosure by Plaintiff does not satisfy the requirements of Rule 26(a)(2)(C). *Id*.

Rule 26(a)(2)(C) "does not require extensive detail" in non-retained expert witness disclosures. *Estate of Stuller v. United States*, No. 11-3080, 2013 WL 1287402, at *3 (C.D. Ill. Mar. 27, 2013). While there must be "more than simple disclosure of the witness," the requirement is much less onerous than that for retained experts. *Morrison v. Wal-Mart Stores, Inc.*, 321 F.R.D. 336, 336 (C.D. Ill. 2017). For example, a disclosure that stated that a witness "would testify regarding the cause and origin of [a] fire as well as the physical damage to" a piece of equipment and about the normal operation of the equipment was found to be adequate under Rule 26(a)(2)(C). *Tate & Lyle Ams. LLC v. Glatt Air Techniques Inc.*, No. 13-2037, 2015 WL 13608395, at *3 (C.D. Ill. Aug. 12, 2015). The Seventh Circuit upheld as sufficient Rule 26(a)(2)(C) disclosures that stated that two witnesses would testify as hybrid fact/expert witnesses about "costs incurred due to" the event underlying the case and, in particular, a schedule of outstanding costs. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 370 (7th Cir. 2017) (quotation marks omitted); *cf. Poer v. United States*, 1:18-cv-01622, 2020 WL 1443197, at * 7 (S.D. Ind. Mar. 25, 2020) (denying a motion to preclude a non-retained expert's testimony even though the Rule 26 disclosure, which stated only that the expert would "testify about his observations, analysis and treatment of [the] plaintiff," was lacking in detail because "the lack of detail was harmless," as his testimony was limited to the observations he had made while treating the plaintiff (quotation marks omitted)).

Under these lenient standards, Plaintiff has satisfied Rule 26's requirements as to her non-retained expert witness disclosure. She has identified the names and medical specialties of each non-retained expert and given a clear indication of their expected testimony: her past medical care, especially that related to her implant, and medical opinions on the link between her injuries and Defendants' product. *See* Pl.'s Designation & Disclosure of Case-Specific Expert Witnesses 2. Beyond this, the disclosure goes on to identify procedures performed by certain of the non-retained experts and their diagnoses. *Id*. at 3–4. The information provided is adequate to give Defendants notice of the general substance of the non-retained experts' expected testimony and to allow Defendants to prepare a response to it.

That Plaintiff's disclosure is sufficient, however, does not fully resolve the issue. To survive summary judgment, Plaintiff "must also establish an evidentiary base for the proximate cause element of [her] claim." *Baltus*, 557 N.E.2d at 586.

### iii.     Specific Causation

Defendants argue that, even if the disclosure is sufficient, Plaintiff "has produced no expert testimony in the summary judgment record on the issue of specific causation." Mem. Supp. Defs.' Mot. Summ. J. 9. Thus, "all of [her] substantive claims fail as a matter of law," entitling Defendants to summary judgment. *Id*. Plaintiff responds that it was Defendants', not her, responsibility to depose her non-retained experts to discover their opinions about the cause of Plaintiff's injuries. Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. 7. She further contends that it was not necessary for her to provide deposition testimony from her non-retained experts because "[g]eneral causation testimony can be sufficient when combined with temporal evidence in order to overcome summary judgment" and her other evidence (in particular her medical

records) suffices to establish a genuine issue of material fact as to the cause of her injuries. *Id*. at 8–9.

Appended to Plaintiff's response to the summary judgment motion are the reports from her retained experts (Dr. Iakovlev, Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. Ex. 5, ECF Nos. 25-2–25-5; Dr. Mays, Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. Ex. 6, ECF No. 25-6 at 2–36; Dr. Margolis, Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. Ex. 7, ECF No. 25-6 at 38–67; Dr. Pence, Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. Ex. 8, ECF No. 25-6 at 69–210; and Dr. Wilson, Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. Ex. 9, ECF No. 25-6 at 212–39); the transcript of Defendants' deposition of Plaintiff, Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. Ex. 1, ECF No. 25-1 at 2–37; Plaintiff's amended fact sheet, Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. Ex. 2, ECF No. 25-1 at 39–41; copies of her medical records, Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. Ex. 3, ECF No. 25-1 at 43–65; and her expert witness disclosure. Defendants' exhibits to their motion for summary judgment also include the transcript of Plaintiff's deposition, Defs.' Mot. Summ. J. Ex. B, ECF No. 20-1 at 9–44; the amended fact sheet, Defs.' Mot. Summ. J. Ex. A, ECF No. 20-1 at 2–7; and Plaintiff's expert witness disclosure, Defs.' Mot. Summ. J. Ex. D, ECF No. 20-1 at 48–52, along with one other document: a one-page medical record written by Dr. Ali ("Ali Record") suggesting that Plaintiff consult Dr. Sand for removal of her mesh implant, Defs.' Mot. Summ. J. Ex. C, ECF No. 20-1 at 46. This is the sum total of Rule 56(c)(1) documents that the court will consider in resolving the motion for summary judgment. Any support for Plaintiff's position must be among these materials.

As discussed above, expert testimony is necessary to establish causation in this case, *see supra* § II(a)(i), and if Plaintiff does not proffer such evidence, she cannot survive summary judgment, *see Baltus*, 557 N.E.2d at 584. Here, it is important to distinguish between the

evidence Plaintiff must show as to general causation and the evidence she must show as to specific causation. "General causation refers to whether the substance at issue had the capacity to cause the harm alleged, while individual [i.e. specific] causation refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance." *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 701 (7th Cir. 2015) (quotation marks omitted). In Illinois, evidence on specific causation is necessary not only as a basis "for a reasonable inference that a condition of an allegedly defective product proximately caused the plaintiff's injury" but also "for elimination of reasonable secondary causes." *SmithKline*, 2008 WL 205410, at *4.

The five reports from the retained experts are sufficient to establish general causation at the summary judgment stage, which Defendants do not contest, *see* Mem. Supp. Defs.' Mot. Summ. J. 7. However, none of these reports mentions Plaintiff specifically or includes any information whatsoever about Plaintiff's individual injuries. Evidence of a general link between the product and the types of injuries allegedly suffered by Plaintiff is not on its own sufficient evidence of a specific link between the device implanted in Plaintiff and her actual injuries, which Plaintiff does not attempt to claim, *see* Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. 7–8 ("Plaintiff disclosed five separate expert witnesses who have prepared reports regarding their opinions that Defendants' TVT-O product causes various significant injuries *to women*. The *types of injuries* Plaintiff has claimed here . . . are the *types of injuries* associated with mesh products." (emphasis added) (citation omitted)). The question becomes whether any of the other material listed above counts as an expert report creating a question of material fact as to specific causation.

Plaintiff's expert disclosure cannot provide the necessary link between Plaintiff's mesh implant and her injuries. The disclosure provides little more than vague assertions by Plaintiff—

13

not the non-retained experts—about the topics as to which she anticipates they will testify, and it does not qualify as evidence in support of Plaintiff's opposition to summary judgment. *See Huggins v. N.C. Dep't of Admin.*, No. 5:10-CV-414-FL, 2013 WL 5201033, at *20 n.7 (E.D.N.C. Sept. 13, 2013) (finding that the plaintiff's Rule 26(a)(2) expert disclosure was merely a "forecast of the expert's opinion, [which] in and of itself, is not evidence" and that therefore the court would not consider the information contained therein in evaluating the plaintiff's opposition to the defendant's summary judgment motion); *Sauers v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, No. 1:15CV427, 2018 WL 1627160, at *5 (M.D.N.C. Mar. 30, 2018) (declining to consider the plaintiff's expert disclosures as evidence in support of her argument at summary judgment because the "disclosures are simply counsel's summary of anticipated testimony from various witnesses").

Plaintiff's argument that she was not responsible for deposing her own experts misses the point. It is true that "Rule 56 does not require the nonmoving party to depose her own witnesses." *Celotex*, 477 U.S. at 324. Should this case proceed to trial, Plaintiff would be able to have her non-retained experts testify, even if they had never been deposed. But to survive summary judgment, Plaintiff needs to provide more than the mere future possibility that her experts will show the existence of a genuine dispute of fact—she must produce some evidence in support of her position. *See* Fed. R. Civ. P. 56(c)(1). And Defendants may prevail on summary judgment by pointing to an absence of evidence supporting Plaintiff's case. *See Celotex*, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").

As for her medical records, these, too, cannot be considered expert testimony on the issue of specific causation. Although the medical records were produced by physicians who appear on Plaintiff's list of non-retained experts, *see, e.g.*, Pl.'s Medical Records 43–44[8] (operative report by Dr. Steutermann); *id*. at 53–58 (notes by Dr. Sand), the records themselves are not opinions establishing specific causation because "they require a medical expert to interpret," *see Christian v. Cook Inc.*, No. 2:13-cv-20841, 2015 WL 3557242, at *2 (S.D. W. Va. June 4, 2015) (finding that a medical diagnosis and an operative report "alone do nothing to establish specific causation"). Furthermore, none of the medical records appended to Plaintiff's response contain any definitive opinion of causation.

The earliest medical record that Plaintiff provides is the operative report from her January 26, 2005 surgery, during which she was implanted with the TVT-O and also underwent a total vaginal hysterectomy. Pl.'s Medical Records 43–44. The records then jump ahead to 2015. Plaintiff was referred to Dr. Sand due to "suprapubic and left groin pain that rad[]iates down the left medial thigh and into the vagina," which had "gotten worse in the last 6 months but . . . been there for years," and met with him on February 10, 2015. *Id*. at 53. In his notes on Plaintiff's medical history, Dr. Sand wrote that in 2005, she also had a Burch procedure, and prior to their 2015 meeting, she had "had 6-7 laparoscopies for pelvic adhesions." *Id*. She had "had a prior anterior repair;" two of her doctors "thought she might have interstitial cystitis," for which she had taken medicine. *Id*. She had been diagnosed with endometriosis. *Id*. Dr. Sand indicated that her "pelvic groin [pain] began" after the hysterectomy and mesh implantation. *Id*. At an appointment on April 14, 2015, Dr. Sand noted that Plaintiff had "had the[ ]groin and leg pain

---

[8] Plaintiff's medical records are produced jointly as Exhibit 3 to Plaintiff's response to the motion for summary judgment. Because Exhibit 3 does not have independent page numbers, citations to pages in Exhibit 3 take the following form: Pl.'s Medical Records __ (page number provided by the CM/ECF system).

since her transobturator midurethral sling procedure in 2005 but [he could not] feel any transobturator midurethral sling procedure mesh." *Id*. at 63.  He also wrote that her pelvic pain "seem[ed] to be secondary to her misplaced distal transobturator midurethral sling procedure" and that they had "discussed the need to remove [the sling] before proceeding with" other treatment. *Id*. at 64.  Procedure notes from May 18, 2015 detail Plaintiff's surgery to remove a portion of the mesh sling. *Id*. at 47–49.  The notes include that Dr. Sand found "no evidence of . . . any mesh erosion into the bladder or urethra." *Id*. at 48.  In the additional record provided by Defendants, Dr. Ali wrote that Plaintiff was complaining of "pelvic pain" and made a note: "[m]esh put in??" Ali Record 1.

Nothing in these records provides the Court with enough evidence to find that there is a genuine dispute of material fact as to the cause of Plaintiff's injuries.  First, these notes would "require a medical expert to interpret" and so cannot be considered expert testimony. *See Christian*, 2015 WL 3557242, at *2.  Second, even if they were, there are only two places in the records where a doctor suggested an explanation for Plaintiff's pain, and neither is conclusive evidence in favor of Plaintiff.  Dr. Sand's note that her pelvic pain "seem[ed] to be secondary to her misplaced distal transobturator midurethral sling procedure," Pl.'s Medical Records 64, not only is equivocal but also suggests a problem with the *placement* of the device rather than the device itself.  *See also Lewis v. Johnson & Johnson*, 601 F. App'x 205, 211 (4th Cir. 2015) (differentiating a doctor's testimony that "the 'presence' of the TVT caused [the plaintiff's] pain" from the argument that "a *defect* in the TVT caused her pain").  And it is unclear what Dr. Ali's note of "mesh put in??," Ali Record 1, means—it could have been an initial guess or Plaintiff's own belief.  Regardless, it is not medical testimony opining that Plaintiff's injuries

were caused by defects in the TVT-O.[9] Plaintiff's medical records do not provide the expert evidence she needs to withstand summary judgment.

Plaintiff's only remaining argument is that her expert testimony as to general causation, combined with temporal evidence, is enough to survive summary judgment. She argues that she "has provided multiple expert reports establishing the causal link between her injuries and Defendants' product" and has "also provided sufficient evidence of the temporal link between Plaintiff's implant of the mesh and the development of or worsening of Plaintiff's symptoms, in particular her multiple medical records." Pl.'s Suggestions Opp'n Defs.' Mot. Summ. J. 8–9. This, she believes, is sufficient to satisfy her burden at summary judgment. *Id*. Defendants counter that Illinois courts have not accepted using a temporal relationship as a proxy for specific causation evidence and that even if such an argument were acceptable, Plaintiff has not shown a temporal relationship. Defs.' Reply 7–9; *see Hussung v. Patel*, 861 N.E.2d 678, 685–86 (Ill. App. Ct. 2007) (rejecting the "plaintiff's argument that the . . . temporal relationship between the injection and plaintiff's injuries is sufficient to support an inference of causation and thus to raise a genuine issue of fact as to proximate cause"); *see also Guevara v. Ferrer*, 247 S.W.3d 662, 667–68 (Tex. 2007) ("Most federal courts that have considered the issue after *Daubert* have concluded that temporal proximity alone does not meet standards of scientific reliability and does not, by itself, support an inference of medical causation." (footnote omitted) (collecting cases)).

---

[9] In her deposition, Plaintiff testified that Dr. Ali told her when referring her to Dr. Sand that "the TVT-O device was the cause of the adhesions that [she] was having to [her] bowels and [her] vaginal side walls," May-Weirauch Dep. 115:17–116:12, which led to her surgery in May 2015 to remove the mesh, *id*. at 118:7–9. Plaintiff's own recollection of what her doctor told her is not expert evidence, and this indication of causation will not be considered in the expert evidence analysis.

17

Even if a temporal argument were available, Plaintiff has not shown that such a temporal link exists in her case. Plaintiff cites *In re Lipitor*, 226 F. Supp. 3d 557 (D.S.C. 2017), to support her point. That case discusses the possibility that expert testimony on general causation plus non-expert evidence probative of causation, such as the "immediate onset of symptoms," could be sufficient to allow a plaintiff to survive summary judgment. *In re Lipitor*, 226 F. Supp. 3d at 579. However, the court found that the particular circumstances underlying that case did not allow for such an inference because the plaintiffs developed the medical problem "months or years" after exposure to the product and "had other substantial risk factors," undermining the link between exposure and injury. *Id.* at 581. Moreover, the cases to which the opinion cites where temporal evidence in combination with general causation expert testimony *was* sufficient involve situations where the injury occurred immediately after the exposure and other potential causes were excluded. *Id.* at 579–80; *see, e.g.*, *Smith v. Hines*, 261 P.3d 1129, 1135 (Okla. 2011) (finding that a temporal showing plus general causation expert testimony was sufficient to submit the question of causation to the jury where "the plaintiff's evidence reasonably tended to exclude every other possible cause" (quotation marks omitted)); *Rodrigues v. Ga.-Pac. Corp.*, 661 S.E.2d 141, 144 (Ga. Ct. App. 2008) (allowing an inference of causation where nonexpert evidence showed that the plaintiff, who "was in apparent good health, . . . immediately became ill upon his exposure to the chlorine, which continuously worsened into the pneumonia he suffered when he presented at the emergency room").

Plaintiff was implanted with the TVT-O on January 26, 2005. In her fact sheet, she wrote that she first experienced the type of pain she alleges in her lawsuit a few months after the surgery, Am. Pl. Fact Sheet ¶ 6(b), and her medical records state that her pelvic pain began around the time of her mesh implantation and hysterectomy, Pl.'s Medical Records 53. She did

not recall when she first had sexual intercourse after the procedure but stated that she has not been able to have sexual intercourse without pain since that time. May-Weirauch Dep. 93:14–23. Apart from the note mentioned above, her medical records do not contain more specifics about when her pain began.

In addition to the mesh implantation, Plaintiff has an extensive surgical history and admitted in her deposition that she has had "a lot of surgeries." *See* May-Weirauch Dep. 77:3. Prior to her mesh implantation, she had a Burch procedure performed on her bladder. *Id.* at 73:1–74:10; Pl.'s Medical Records 53. During the same procedure in which she was implanted with the TVT-O, she also underwent a total vaginal hysterectomy. Pl.'s Medical Records 43–44. Prior to her 2015 meeting with Dr. Sand, she had "had 6-7 laparoscopies for pelvic adhesions." *Id.* at 53; May-Weirauch Dep. 98:18–20. She has been diagnosed with endometriosis. Pl.'s Medical Records 53; May-Weirauch Dep. 102:16–17. Her ovaries were removed soon after the hysterectomy and mesh implantation. May-Weirauch Dep. 101:8–18. After one of her surgeries (it is unclear which one), she developed an infection on the top of her pelvic area. *Id.* at 105:20–106:9.

*In re Lipitor* suggests that a months-long gap between the exposure and the injury may be enough to undermine an inference of causation, *see In re Lipitor*, 226 F. Supp. 3d at 581 (declining to infer causation where the plaintiffs' injuries arose "months or years" after the exposure), and Plaintiff stated that her symptoms began "[a] few months after [the] surgery" to implant the TVT-O, Am. Pl. Fact Sheet ¶ 6(b). Even if this gap were not enough to break the chain by itself, though, Plaintiff has simply not provided enough evidence of a link for the Court to be able to infer a causal relationship between the implant and the injury. Plaintiff's extensive surgical history, which includes a vaginal hysterectomy the same day she received the TVT-O

19

implant and several other surgeries on the same part of her body, casts doubt on the likelihood that it was this one particular procedure that resulted in injury. *In re Lipitor*, 226 F. Supp. 3d at 581 (noting that the fact that the plaintiffs "had other substantial risk factors" also precluded the court from inferring causation). Expert testimony on Plaintiff's particular circumstances could have clarified whether her other surgeries caused or contributed to her injuries or could have eliminated them as a potential source of injury, but without such testimony, the Court does not find that Plaintiff has provided sufficient evidence of a close temporal relationship for it to infer a causal connection between the implantation of the TVT-O and her injuries.

Without expert testimony on specific causation, no genuine issue of material fact remains in this case, and Defendants are entitled to judgment as a matter of law.

### b. Remaining Arguments

Because this resolves the case, the Court does not find it necessary to address Defendants' arguments in the alternative.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 20, is GRANTED. The Clerk is directed to enter judgment and close the case.

Entered this 25th day of November, 2020.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
